Citation Nr: 1602927 
Decision Date: 01/29/16 Archive Date: 02/05/16

DOCKET NO. 10-07 122 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Montgomery, Alabama


THE ISSUE

Entitlement to service connection for a neurologic disability of the bilateral upper extremities, to include peripheral neuropathy and carpal tunnel syndrome, to include as secondary to service-connected diabetes mellitus type 2.


REPRESENTATION

Veteran represented by: The American Legion


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

Kristy L. Zadora, Counsel
INTRODUCTION

The Veteran had active duty service from October 1957 to October 1977.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a January 2008 rating decision by the Montgomery, Alabama Department of Veterans Affairs (VA) Regional Office (RO).

In June 2014, the Veteran testified before the undersigned Acting Veterans Law Judge at a Videoconference hearing. A hearing transcript has been associated with the record.

In November 2014, the Board remanded the instant matter for additional development.

This appeal is being processed using the Veterans Benefits Management System (VBMS) paperless, electronic claims processing system. The Board notes that, in addition to the VBMS file, there is a separate paperless, electronic Virtual VA file associated with the Veteran's claim. A review of the Virtual VA file reveals that, with the exception of the June 2014 hearing transcript, the documents are either irrelevant to the claim on appeal or duplicative of those documents contained in the VBMS file.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).


FINDING OF FACT

Resolving all doubt in his favor, the Veteran's bilateral upper extremity peripheral neuropathy is etiologically related to his service-connected diabetes mellitus, type II.


CONCLUSION OF LAW

The criteria for service connection for bilateral upper extremity peripheral neuropathy as secondary to service-connected diabetes mellitus, type 2 have been met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.310 (2015). 
 

REASONS AND BASES FOR FINDING AND CONCLUSION

At the outset, the Board notes that the Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (codified at 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, and 5126 (West 2014) includes enhanced duties to notify and assist claimants for VA benefits. VA regulations implementing the VCAA were codified as amended at 38 C.F.R. §§ 3.102, 3.156(a), 3.159, and 3.326(a) (2015).

Given the favorable disposition of the claim for service connection for a neurologic disability of the bilateral upper extremities, namely peripheral neuropathy, the Board finds that all notification and development actions needed to fairly resolve this claim have been accomplished.

The Veteran contends that he suffers from a neurological disability of the upper extremities, to include peripheral neuropathy and/or carpal tunnel syndrome, as a result of his service. In the alternative, he contends that this disability was caused or aggravated by his service-connected diabetes mellitus. During a June 2014 hearing, the Veteran testified that he had been diagnosed with diabetes mellitus in the mid-1990s and that his symptoms of hand numbness began in approximately 2000.

Service connection may be established for disability resulting from personal injury suffered or disease contracted in the line of duty, or from aggravation of a preexisting injury suffered or disease contracted in line of duty. See 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303. Service connection may be granted for a disability diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability is due to disease or injury that was incurred or aggravated in service. 38 C.F.R. § 3.303(d). 

In order to establish service connection for the claimed disorder on a direct basis, there must be competent evidence of (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the current disability. See Hickson v. West, 12 Vet. App. 247, 253 (1999). See also Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006). The determination as to whether elements are met is based on an analysis of all the evidence of record and the evaluation of its credibility and probative value. See Baldwin v. West, 13 Vet. App. 1, 8 (1999). 

Service connection may be established on a secondary basis for a disability that is proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310(a). Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) caused by or (b) aggravated by a service-connected disability. 38 C.F.R. § 3.310(a); Allen v. Brown, 7 Vet. App. 439 (1995). VA has amended 38 C.F.R. § 3.310to explicitly incorporate the holding in Allen, except that it will not concede aggravation unless a baseline for the claimed disability can be established with evidence created prior to any aggravation. 38 C.F.R. § 3.310(b).

Service treatment records are negative for complaints, treatments or diagnoses related to peripheral neuropathy of the upper extremities.

Post-service treatment record contain an April 2004 private treatment note, which indicates that the Veteran's diabetes mellitus had its onset in 1995. A May 2005 private treatment note reflects the Veteran's complaints of tingling in both of his arms. In a July 2008 opinion, Dr. M. H. indicates that that while a March 2002 glucose tolerance test showed that the Veteran had diabetes, in all likelihood this disability had been present for five to seven years prior to the test (i.e., between 1995 and 1997).
Turning to the question of whether there is an etiological relationship between the Veteran's peripheral neuropathy of the upper extremities and service-connected diabetes mellitus, type 2, the Board notes that the record contains two separate etiology opinions which must be considered and weighed. See Hayes v. Brown, 5 Vet. App. 60, 69-70 (1993) (citing Wood v. Derwinski, 1 Vet. App. 190, 192-93 (1992)). See also Guerrieri v. Brown, 4 Vet. App. 467, 470-471 (1993) (stating that the probative value of medical evidence is based on the physician's knowledge and skill in analyzing the data, and the medical conclusion the physician reaches; as is true of any evidence, the credibility and weight to be attached to medical opinions are within the province of the Board). When faced with conflicting medical opinions, the Board may favor one medical opinion over the other. See Evans v. West, 12 Vet. App. 22, 30 (1998), citing Owens v. Brown, 7 Vet. App. 429, 433 (1995). The Board will consider each of these opinions below. 

In a January 2010 VA examination report, a VA examiner opined that it was less likely than not that the Veteran's carpal tunnel syndrome/peripheral neuropathy was caused by a result of his diabetes mellitus. The examiner reasoned that the Veteran had been diagnosed with diabetes in approximately May 2002, that his symptoms were predominately in his hands without significant symptoms in his lower extremities and that a 2008 nerve conduction study documented findings of bilateral carpal tunnel syndrome without mention of the diffuse polyneuropathy as seen in those with diabetes. The examiner further noted that the Veteran's carpal tunnel syndrome predated his documented diabetes diagnosis and that the Veteran had been previously employed as a mechanic, an occupation which required repetitive motion, a major risk factors for development of carpal tunnel syndrome. However, this opinion appears to be based upon an inaccurate factual premise, namely that the Veteran's neurological disorder was diagnosed prior to his diabetes mellitus, as the record demonstrates that the Veteran's diabetes mellitus had been diagnosed at least three years prior to the onset of his neurologic disorder. Therefore, as this opinion appears to be based upon an inaccurate factual premise, it is being afforded little, if any, probative weight. See Reonal v. Brown, 5 Vet. App. 458, 461 (1993). 

In contrast, an August 2015 VA examination report noted that the May 2015 nerve conduction study had revealed predominately axonal sensory greater than motor neuropathy in the Veteran's upper extremities and that such findings were consistent with diabetic neuropathy. The examiner further noted that this nerve conduction study did not find carpal tunnel syndrome. Therefore, the examiner opined that it was at least as likely as not that the Veteran's peripheral neuropathy was caused by his service-connected diabetes mellitus, type II. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 301 (2008) (stating that a medical examination report must contain not only clear conclusions with supporting data, but also a reasoned medical explanation connecting the two); see also Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007) ("[A]medical opinion ... must support its conclusion with an analysis that the Board can consider and weigh against contrary opinions"). As such, this opinion is being afforded probative weight.

When, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding service origin, the degree of disability, or any other point, such doubt will be resolved in favor of the claimant. See 38 C.F.R. § 3.102. See also 38 U.S.C.A. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).

Given the facts of this case, and resolving all reasonable doubt in the Veteran's favor, the Board concludes that the criteria for service connection for bilateral upper extremity peripheral neuropathy as secondary to service-connected diabetes mellitus, type 2, are met.


ORDER

Service connection for bilateral upper extremity peripheral neuropathy as secondary to service-connected diabetes mellitus, type 2, is granted, subject to the legal authority governing the payment of VA compensation.



____________________________________________
D. JOHNSON
Acting Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs