Citation Nr: 1717658 
Decision Date: 05/22/17 Archive Date: 06/05/17

DOCKET NO. 09-27 887A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Los Angeles, California


THE ISSUE

Entitlement to service connection for cause of the Veteran's death. 


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States


WITNESSES AT HEARING ON APPEAL

Spouse and his daughter




ATTORNEY FOR THE BOARD

M. Rescan, Associate Cousel 


INTRODUCTION

The Veteran served in the United States Army from September 1967 to July 1969, and his active service included a tour of duty in the Republic of Vietnam. The Veteran died in August 2007 and the appellant is his surviving spouse. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal of a May 2008 rating decision from the Department of Veterans' Affairs (VA) Regional Office (RO) in Los Angeles, California denying the Veteran's claim for service connection for cause of the Veteran's death. 

In July 2013, the appellant and the Veteran's daughter testified at a Board hearing before the undersigned Veteran's Law Judge. A copy of the hearing transcript is associated with the record. 

This case was previously remanded in December 2013, May 2014, and December 2015 to the Agency of Original Jurisdiction (AOJ) for further development. 

In April 2017, the Board received a Veterans Health Administration (VHA) opinion in connection with the current appeal. Given the favorable decision below, the Board finds that the appellant will not be prejudiced by issuing this decision before providing the appellant and her representative with a copy of the VHA.





FINDING OF FACT

The most probative evidence of record shows that the Veteran's in-service exposure to herbicides in Vietnam caused the hypertension and stroke that contributed substantially or materially to cause the Veteran's death.


CONCLUSION OF LAW

The criteria for service connection for the cause of the Veteran's death have been met. 38 U.S.C.A. § 1310 (West 2014); 38 C.F.R. § 3.312 (2016).


REASONS AND BASES FOR FINDING AND CONCLUSION

The Claim 

The appellant claims, in substance, that the Veteran's pancreatic cancer and hypertension were the result of him being exposed to herbicides when he was stationed in the Republic of Vietnam and these disabilities eventually caused his death. 

In order to establish service connection for the cause of the Veteran's death, the evidence must show that a disease or disability incurred in or aggravated by service either caused or contributed substantially or materially to cause death. 38 U.S.C.A. § 1310; 38 C.F.R. § 3.312(a).

In determining whether a service-connected disability contributed to death, it must be shown that it contributed substantially or materially; that it combined to cause death; that it aided or lent assistance to the production of death. It is not sufficient to show that it casually shared in producing death, but rather it must be shown that there was a causal connection. 38 C.F.R. § 3.312(c)(1).

As to herbicide exposure, VA laws and regulations provide that a veteran who, during active military, naval, or air service, served in the Republic of Vietnam during the Vietnam war (i.e., January 9, 1962, to May 7, 1975), shall be presumed to have been exposed to an herbicide agent, unless there is affirmative evidence to the contrary. 38 U.S.C.A. § 1116 (a)(3); 38 C.F.R. § 3.307 (a)(6)(iii). The last date on which such a veteran shall be presumed to have been exposed to an herbicide agent shall be the last date on which he served in the Republic of Vietnam during the Vietnam war period. 38 C.F.R. § 3.307. For these Vietnam war veterans, diseases associated with exposure to certain herbicide agents will be presumed to have been incurred in service even though there is no evidence of that disease during the period of service at issue. 38 U.S.C.A. § 1116; 38 C.F.R. §§ 3.307, 3.309 (2016). 

The list of diseases associated with exposure to certain herbicide agents are as follows: AL amyloidosis; chloracne or other acneform diseases; Type II diabetes; Non-Hodgkin's lymphoma; Hodgkin's disease; chronic lymphocytic leukemia; multiple myeloma; acute and subacute peripheral neuropathy; porphyria cutanea tarda; respiratory cancers; prostate cancer; and soft-tissue sarcoma (other than osteosarcoma, chondrosarcoma, Kaposi's sarcoma, or mesothelioma). The term "soft-tissue sarcoma" includes adult fibrosarcoma, dermatofibrosarcoma protuberans, malignant fibrous histiocytoma, liposarcoma; leiomyosarcoma; epithelioid leiomyosarcoma (malignant leiomyoblastoma); rhabdomyosarcoma; ectomesenchymoma; angiosarcoma (hemangiosarcoma and lymphangiosarcoma); proliferating (systemic) angioendotheliomatosis; malignant glomus tumor; malignant hemangiopericytoma; synovial sarcoma (malignant synovioma); malignant giant cell tumor of tendon sheath; malignant schwannoma, including malignant schwannoma with rhabdomyoblastic differentiation (malignant Triton tumor), glandular and epithelioid malignant schwannomas; malignant mesenchymoma; malignant granular cell tumor; alveolar soft part sarcoma; epithelioid sarcoma; clear cell sarcoma of tendons and aponeuroses; extraskeletal Ewing's sarcoma; congenital and infantile fibrosarcoma; malignant ganglioneuroma; and amyotrophic lateral sclerosis (ALS). 38 U.S.C.A. §1116; 38 C.F.R. §§ 3.307 (a)(6)(iii), 3.309(e), 3.313, 3.318.

The availability of presumptive service connection for a disability based on exposure to herbicides does not preclude a veteran from establishing service connection with proof of direct causation. Stefl v. Nicholson, 21 Vet. App. 120 (2007); see also Combee v. Brown, 34 F.3d 1039 (Fed. Cir. 1994).

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under the laws administered by VA. VA shall consider all information and medical and lay evidence of record. Where there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

In evaluating the evidence in any given appeal, it is the responsibility of the Board to weigh the evidence and decide where to give credit and where to withhold the same and, in so doing, accept certain medical opinions over others. Schoolman v. West, 12 Vet. App. 307, 310-11 (1999). In this regard, the Board has been charged with the duty to assess the credibility and weight given to evidence. Davidson v. Shinseki, 581 F. 3d 1313 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007). Indeed, the Court has declared that in adjudicating a claim, the Board has the responsibility to do so. Bryan v. West, 13 Vet. App. 482, 488-89 (2000). In doing so, the Board is free to favor one medical opinion over another, provided it offers an adequate basis for doing so. Evans v. West, 12 Vet. App. 22, 30 (1998). 

As to the Veteran's cause of death, his death certificate indicated that he died of respiratory failure due to pneumonia, stroke, and pancreatic cancer with hypercoagulable syndrome. See Certificate of Death dated in August 2007.

Moreover, a review of the record on appeal reveals that the Veteran served in the Republic of Vietnam (see DD 214 July 1969) and therefore the Board finds that it is presumed that he had exposure to a herbicide agent see 38 U.S.C.A. § 1116; 38 C.F.R. §§ 3.307, 3.309. 

However, despite the Veteran's presumed exposure to a herbicide agent, presumptive service connection under 38 C.F.R. § 3.307(a)(6) is not warranted because the Veteran did not have a diagnosis set forth under 38 C.F.R. § 3.309(e). Nevertheless this does not preclude the appellant from establishing service connection with proof of direct causation. See Stefl, supra; Combee, supra. 

Turning to the nexus between the Veteran's service and the disease process that the death certificate reported as having caused his death, the Board obtained a VHA opinion in April 2017. This expert's opinion was that the patient's circulatory diseases, in particular his hypertension and stroke, were at least as likely as not to have been caused by his exposure to Agent Orange despite the presence of other risk factors such as smoking. Moreover, the expert stated that it was reasonable to think that toxicity due to Agent Orange herbicide exposure can cause these conditions often in a delayed manner sometimes decades later as in the case of this patient. Furthermore, the doctor added that hypertension by itself is the most well-known risk factor for stroke based on the established literature spanning over several decades of research. The expert concluded by saying that the patient's respiratory failure and pneumonia were also at least as likely as not to have been initiated by his stroke and that therefore, one can argue that they were also secondarily related to the Veteran's Agent Orange exposure. This is due to the fact that after a stroke, a person will become more likely to develop pneumonia that thereafter causes respiratory failure due to a primarily heightened risk for aspiration of oral bacteria and ingested food materials into the lungs. 

The Board finds the April 2017 expert's opinion is the most probative evidence of record because the examiner provided a thorough opinion based on a detailed review of the record on appeal with supporting citations to medical journals and to the evidence found in the record. See Owens v. Brown, 7 Vet. App. 429, 433 (1995) (holding that VA may favor the opinion of one competent medical expert over that of another when decision makers give an adequate statement of reasons and bases).
 
In reaching the above conclusions, the Board has not overlooked the January 2014, May 2015, and February 2016 VA examinations in which those examiners did not opine that any of the disease process that caused the Veteran's death was related to his exposure to herbicides in service. However, the Board does not find these VA opinions to be probative because these examinations did not provide a thorough discussion that addressed all the impacts of herbicide exposure nor did they address all the theories that could have caused the Veteran's death. See Owens, supra. 

Accordingly, the Board finds that the most probative evidence of record shows that the Veteran's in-service exposure to herbicides caused the disease processes (i.e., hypertension and stroke) that contributed substantially or materially to the cause death and that the criteria for service connection for the cause of the Veteran's death have therefore been met. 38 U.S.C.A. § 1310; 38 C.F.R. § 3.312. 








ORDER

Service connection for the cause of the Veteran's death is granted.




____________________________________________
Michael J. Skaltsounis
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs