Citation Nr: 1736744 
Decision Date: 08/28/17 Archive Date: 09/06/17

DOCKET NO. 09-16 286 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Boston, Massachusetts


THE ISSUE

1. Entitlement to a disability rating in excess of 50 percent for schizophrenia, paranoid type, prior to March 22, 2012. 

2. Entitlement to a disability rating in excess of 70 percent for schizophrenia, paranoid type, from March 22, 2012. 


REPRESENTATION

Veteran represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

Veteran



ATTORNEY FOR THE BOARD

J.M. Jordan, Associate Counsel


INTRODUCTION

The Veteran served on active duty in the U.S. Army from February 1966 to February 1969 and from March 1969 to March 1972. The Veteran served during the Vietnam Era. For his meritorious service, the Veteran was awarded (among other decorations) the Vietnam Service Medal with two bronze stars.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a June 2007 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Boston, Massachusetts. 

In November 2008, the Veteran testified before a Decision Review Officer (DRO). A transcript of the hearing has been associated with the claims file. 

A May 2015 rating decision granted an increase evaluation of 70 percent disabling for the Veteran's schizophrenic reaction paranoid type, effective March 22, 2012. 

In the December 2015 Appellate Brief, the Veteran's representative reported that the Veteran's symptoms had increased in severity since the March 2012 examination. 

In December 2015, the Board remanded the issue for additional development. As those records have been obtained, the claim has been returned for appellate review.

The Virtual VBMS paperless claims processing system was reviewed.




FINDINGS OF FACT

1. Prior to March 22, 2012, the Veteran's schizophrenic reaction, paranoid type has been productive of occupational and social impairment, with reduced reliability and productivity due to such symptoms as difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships.

2. From March 22, 2012, the Veteran's schizophrenia reaction type has been manifested by occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; difficulty in adapting to stressful circumstances (including work or a work like setting); inability to establish and maintain effective relationships. 


CONCLUSIONS OF LAW

1. The criteria for a disability evaluation in excess of 50 percent for service connected schizophrenic reaction, paranoid type, prior to March 22, 2012, have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2002 & Supp. 2009); 38 C.F.R §§ 3.321(b), 4.1, 4.2, 4.7, 4.130, Diagnostic Code 9201(2016).

2. The criteria for a disability evaluation in excess of 70 percent for service connected schizophrenic reaction, paranoid type, from March 22, 2012, have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2002 & Supp. 2009); 38 C.F.R §§ 3.321(b), 4.1, 4.2, 4.7, 4.130, Diagnostic Code 9201(2016).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VA has satisfied its duties under the Veteran's Claims Assistance Act of 2000 (VCAA) to notify and assist, and the Veteran has not raised any procedural arguments regarding the notice or assistance provided in this case. Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015).

Merits of the Claim

Disability evaluations are determined by the application of the VA Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and their residual conditions in civil occupations. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1.

In a claim for a greater original rating after an initial award of service connection, all of the evidence submitted in support of the Veteran's claim is to be considered. In initial rating cases, separate ratings can be assigned for separate periods of time based on the facts found, a practice known as "stage" ratings. Fenderson v. West, 12 Vet. App. 119 (1999); 38 C.F.R. § 4.2 (2015). For reasons discussed in more detail below, the Board finds that the competent evidence demonstrates that the severity of the Veteran's service-connected disability warrants no more than a 50 percent disability evaluation for the period prior to March 22, 2012, and a 70 percent disability rating for the period from March 22, 2012.

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

In accordance with 38 C.F.R. §§ 4.1, 4.2 and Schafrath v. Derwinski, 1 Vet. App. 589 (1991), the Board has reviewed the service medical records and all other evidence of record pertaining to the history of the Veteran's service-connected disability. The Board has found nothing in the historical record that would lead to the conclusion that the current evidence of record is not adequate for rating purposes. The Board is of the opinion that this case presents no evidentiary considerations, except as noted below, that would warrant an exposition of the remote clinical history and findings pertaining to the disability at issue.

Pyramiding, that is the evaluation of the same disability, or the same manifestation of a disability, under different diagnostic codes, is to be avoided when evaluating a Veteran's service-connected disability. 38 C.F.R. § 4.14; see Esteban v. Brown, 6 Vet. App. 259, 261- 62 (1994).

Schizophrenia, Paranoid Type

The Veteran's Schizophrenia, paranoid type is currently evaluated at 70 percent disabling, from March 22, 2012, and 50 percent disabling prior to March 22, 2012, pursuant to 38 C.F.R. § 4.130, Diagnostic Code 9201.

Under Diagnostic Code 9201, a 50 percent evaluation requires occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short-and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and, difficulty in establishing and maintaining effective work and social relationships. Id.

A 70 percent evaluation requires occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately, and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work like setting); and inability to establish and maintain effective relationships. Id.

A 100 percent rating is prescribed when there is evidence of total occupational and social impairment due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations, grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation as to time or place; and memory loss for names of close relatives, own occupation, or own name. Id.

The list of symptoms under the rating criteria are meant to be examples of symptoms that would warrant the rating, but are not meant to be exhaustive, and the Board need not find all or even some of the symptoms to award a specific rating. Mauerhan v. Principi, 16 Vet. App. 436, 442-3 (2002). However, a Veteran may only qualify for a given disability rating under § 4.130 by demonstrating the particular symptoms associated with that percentage, or others of similar severity, frequency, and duration, and that such symptoms have resulted in the type of occupational and social impairment associated with that percentage. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 117-18 (Fed. Cir. 2013).

In evaluating psychiatric disorders, the VA has adopted and employs the nomenclature in the rating schedule based on the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, of the American Psychiatric Association (DSM-IV). See 38 C.F.R. § 4.130. As such, the diagnosis of a mental disorder should conform to DSM-IV. See 38 C.F.R. § 4.125 (a). Diagnoses many times will include an Axis V diagnosis, or a Global Assessment of Functioning (GAF) score. A Global Assessment of Functioning (GAF) rating is a scale reflecting the psychological, social, and occupational functioning on a hypothetical continuum of mental-health illness. Richard v. Brown, 9 Vet. App. 266, 267 (1996) (citing Diagnostic and Statistical Manual of Mental Disorders, 4th ed. 1994). The Board notes that an examiner's classification of the level of psychiatric impairment, by words or by a GAF score, is to be considered, but is not determinative in and of itself, of the percentage rating to be assigned. VAOPGCPREC 10-95.

The Board notes that GAF scores are just one component of the Veteran's disability picture, and that it does not have a "formula" that it follows in assigning evaluations. Rather, the Board considers the Veteran's entire disability picture, including GAF scores. Under such circumstances Veterans with identical GAF scores may be assigned different evaluations based on each individual's symptomatology and level of functioning. Furthermore, the Board need not accept a GAF score as probative. See Evans v. West, 12 Vet. App. 22, 30 (1998), citing Owens v. Brown, 7 Vet. App. 429, 433 (1995) (it is the responsibility of the Board to weigh the evidence, including the medical evidence, and determine where to give credit and where to withhold the same and, in so doing, the Board may accept one medical opinion and reject others).

Prior to March 22, 2012

Prior to March 22, 2012, the Veteran's schizophrenia, paranoid type was rated at 50 percent disabling. The medical evidence, combined with the Veteran's subjective reports of his symptoms, indicates that the severity level of his schizophrenia, paranoid type warrants a continuation of that 50 percent rating for that period. In this regard, the Veteran's schizophrenia, paranoid type produced occupational and social impairment, with reduced reliability and productivity due to such symptoms as impaired judgment; impaired abstract thinking; and disturbances of motivation and mood. 38 C.F.R. § 4.130 , DC 9411.

Regarding occupational impairment, the June 2007 mental outpatient notes reflects that the Veteran's last employment was at Filenes in 2006. He reported that he quit due to his inability to deal with the stress. At the October 2007 examination, the Veteran recounted seeing a Caucasian customers features turn into Vietnamese features. He "freaked out." He abruptly left, never returning to his job. The Veteran reported he is incapable of working. The examiner noted that while the Veteran's symptoms had improved since receiving psychiatric medication and treatment, he would still likely be subject to decompensation with increased stressors, including work. The Veteran preferred not to be around other people and felt unable to work, which impacts his income. He is on lifetime parole. His probation officer told him he does not have to return to work, if he is unable. 

The October 2007 examination report indicates the Veteran had been receiving Risperidone, since June 2007, for his psychiatric condition. He reported a reduction of all his symptoms since being on medication. He reported being less paranoid, less reactive, less irritable, and having fewer auditory hallucinations. Additionally, his sleep improved. He continued the medication and therapy to maintain his stability. 

Regarding social impairment, the October 2007 examiner noted the Veteran had occasional hallucinations when he was alone, paranoia in crowds and difficulty tolerating anyone walking behind him. The Veteran indicated that since the development of his mental condition, he does not go out alone often, and prefers to be accompanied by his wife. His activity increased after receiving medication. The examiner noted that the Veteran does not have any close friends and generally only associates with his wife, niece, and her children, and sees his brother. He remarked that the Veteran has difficulty establishing and maintaining effective work/school relationships because he appears to be unable to maintain work and has very limited social relationships.

The Veteran's schizophrenia, paranoid type does not warrant a 70 percent rating, as his schizophrenia, paranoid type was not manifested with occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking , or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activity; inability to establish and maintain effective relationships. 

The October 2007 examiner noted that the best description of the claimant's current psychiatric impairment is, the psychiatric symptoms cause occupational and social impairment with reduced reliability and productivity. The examiner noted that his finding was supported by the Veteran's difficulty in establishing and maintaining effective work and social relationships and intermittent hallucinations, suspiciousness, and social withdrawal. The examiner expounded, the Veteran had no difficulty understanding commands, and appeared to pose no threat of persistent danger or injury to self or others. 

In subsequent psychiatry outpatient notes, such as the June 2011 notes, the Veteran was noted to be very active, his marriage, stable, no probation problems, and he was continuing with monthly counseling. There was no indication of suicidal or homicidal ideation, no delusions or other abnormalities, and his mood was good. The examiner noted there were no deficits in regard to orientation. The Veteran had been self-modulating symptoms. His GAF score was recorded as 65.

The October 2009 psychiatry outpatient noted that the Veteran's paranoid schizophrenia was stable. His judgment, and insight were fair. His mood was neutral. The Veteran's thought process was organized, linear and goal directed. The Veteran reported tolerating and benefitting from Risperidone. The Veteran indicated that he was coping appropriately with the death of his wife's sister. He stated he continues to stay busy around the house cooking and cleaning.

The December 2009 examination notes, indicate the Veteran was doing fine overall. The Veteran did not report any psychotic symptoms. The Veteran spoke of the death of the wife's brother, soon after the death of the wife's sister. The examiner indicated the Veteran appeared to be coping appropriately. The Veteran reported productive days of cleaning and spending time around the house. The Veteran indicated he was coping with financial constraints due to helping out the wife's family in the Philippines. Further, the examiner noted the Veteran's thought process was organized, linear, and goal oriented. He noted the Veteran did not have any perceptual abnormalities, overt delusions, and his judgment and insight were fair.

The October 2008 mental health outpatient note, indicated the patient continued to report psychiatric benefit from the use of Risperidone. The Veteran continued to spend his days caring for his house and wife. The examiner noted his mood to be euthymic. The Veteran spoke of family in the Philippines and he feels blessed that he and his wife are able to assist them financially. The examiner noted, the Veteran was oriented to self, location, time and situation, and there was no evidence of delusions. His mood was neutral, and affect restricted. The Veteran denies auditory, or visual hallucinations and his judgment and insight were fair.

Thus, the medical evidence, combined with the Veteran's subjective reporting of his symptoms, indicate that his schizophrenia, paranoid type, prior to March 22, 2012, caused occupational and social impairment with reduced reliability and productivity due to such symptoms as flattened affect; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. 38 C.F.R. § 4.130, Diagnostic Code 9201. In this regard, the Board notes that the Veteran tolerated a psychiatric medication regimen. The May 2009 examiner noted the Veteran's schizophrenia, paranoid type, was stable (at baseline). His behavior was appropriate. He denied perceptual disturbances. The Veteran had difficulty establishing and maintaining effective work and social relationships but maintained effective relationships with his wife and members of her family. The Veteran did have disturbances of motivation and mood. 

The Veteran's schizophrenia, paranoid type does not warrant a 100 percent rating, as his schizophrenia, paranoid type was not manifested with total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; gross inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss of names of close relatives, own occupation, or own name. The June 2011 psychiatry outpatient note indicated the Veteran had no delusions or other abnormalities, nor any hallucinations or other abnormalities. Further, the examiner noted the Veteran had no deficits to his orientation, his attention was intact, his memory was intact, and his insight was good. The Veteran's July 2007 mental health note reported the Veteran was doing well. The Veteran denied any overwhelming concerns, and reported that his home life was fine and that he was getting along in the usual manner with his wife. He has been married, to his second wife, since March 1985 and maintains contact and has relationships with his wife's family members. The examiner from the October 2007 examination, remarked that the Veteran is capable of managing benefit payments in his own best interest, and mentally, had no difficulty performing daily living activities.

From March 22, 2012

The medical evidence, combined with the Veteran's subjective reports of his symptoms, indicates that the severity level of his schizophrenia, paranoid type warrants a 70 percent rating from March 22, 2012. The evidence shows that the Veteran's schizophrenia, paranoid type causes occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: anxiety, sleep problems, avoidance issues, disturbances of motivation and mood, irritability and anger issues, and difficulty in establishing and maintaining effective work and social relationships. 38 C.F.R. § 4.130, DC 9411.

Regarding occupational impairment, the June 2016 examination indicates the Veteran's last employment was in 2005 or 2006 at Macys (originally Filene's). In his March 2012 VA examination, the Veteran reported that "people's faces would change" when he was interacting with him. " It was nerve-wracking, so I quit." In July 2011, the Veteran was granted individual unemployability due to a heart condition.

In the June 2016 examination, the examiner opined, that for a significant portion of time since the onset of the disturbance, one or more major areas of functioning, such as work, interpersonal relations, or self-care is markedly below the level achieved prior to the onset. He further stated that occupational attainment is below what would be expected of a person with a Master's Degree. 

The March 2012 examiner summarized the Veteran's symptoms as occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood.

Regarding social impairment, the June 2016 examiner noted that the Veteran has been married since 1985. The Veteran indicated his only social activity is with his wife, and her friends who visit their home. The October 2015 outpatient notes indicate that the Veteran's biggest issue was his wife being away in the Philippines for a funeral. Despite her absence, he was doing well and staying occupied by cooking, cleaning and things of that nature. The record indicates his PTSD, schizophrenia, and anger issues were under control.

In the December 2015 social worker's note, the Veteran reported having his sister-in-law stay with him and his wife to give her respite from a stressful family situation. He reported feeling good about allowing her to stay with them. During that visit, the Veteran indicated he understands it is a long-shot to get a 100% disability rating because of his current level of functioning.

In the August 2014 social worker's notes, the Veteran indicated he continues to adjust to his wife's retirement and would like to continue working on managing the symptoms of his PTSD and improving the communication in his marriage and family. The Veteran reported that he was doing well. He was exercising regularly and watching his diet. The Veteran reported that in addition to exercising, he keeps busy by doing household projects and gardening with his wife. He did indicate that he tries to control his anger but sometimes yells. He and the social worker discussed ways for him to assert himself more gently. The Veteran indicated he is willing to try. 

Thus, the medical evidence, combined with Veteran's subjective reports of his symptoms, indicates that the Veteran's schizophrenia, paranoid type causes occupational and social impairment with deficiencies in most areas such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as depressed mood, chronic sleep impairment, impairment of short term memory, problems with concentration, hypervigilance, anger control issues, increasingly isolative behavior, and difficulty in adapting to stressful circumstances. The Board finds the Veteran's symptoms of his schizophrenia, paranoid type do not warrant an evaluation higher than the currently assigned 70 percent disability evaluation, from March, 2012. 38 C.F.R. § 4.130, DC 9201.

Additionally, the Veteran's schizophrenia, paranoid type does not warrant a 100 percent rating, as his schizophrenia, paranoid type is not manifested by total occupational and social impairment. With regard to social and occupational impairment, there is no evidence that the Veteran has total social impairment or occupational impairment with deficiencies in most areas. The record indicates the Veteran has a good relationship with his wife. In the May 2016 social work notes the Veteran states that he feels things have been going very well. He states that he and his spouse get in minor arguments here and there, as any couple would that is home all day, every day. He states that he has been able to manage his anger and knows when to walk away, or let trivial complaints go. The social worker noted that the Veteran is doing very well. The Veteran indicates that he is able to control his symptoms of schizophrenia well using past experience. In his June 2016 examination, the Veteran stated, being on parole is a check on his behavior and a positive force in his life.

While the Veteran does have irritability issues, there is no evidence that he has impaired impulse control with periods of violence. There is nothing in the record to indicate he has obsessive rituals, neglect of appearance, continuous panic, or disorientation of any kind. There is no evidence of gross impairment of thought, or communication. The Veteran does not have delusions or hallucinations. Finally, there was no evidence of grossly inappropriate behavior or persistent danger of the Veteran hurting himself or others. Therefore, the Veteran is not entitled to a 100 percent disability rating for his schizophrenia, paranoid type. 38 C.F.R. § 4.130, DC 9201.

A basis upon which to assign an increased rating for the Veteran's schizophrenia, paranoid type, for the period from March 22, 2012, has not been presented. 


ORDER

Entitlement to an increased rating in excess of 50 percent, prior to March 22, 2012 for schizophrenia, paranoid type is denied.

Entitlement to an increased rating in excess of 70 percent, from March 22, 2012, for schizophrenia, paranoid type is denied.



____________________________________________
Cynthia M. Bruce
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs