﻿Citation Nr: AXXXXXXXX
Decision Date: 07/30/19 Archive Date: 07/30/19

DOCKET NO. 181231-2138
DATE: July 30, 2019

ORDER

Entitlement to special monthly compensation (SMC) based on aid and attendance or at the housebound rate is denied.

FINDING OF FACT

The preponderance of the evidence of record shows that the Veteran has not suffered the anatomical loss or loss of use of both feet, one hand and one foot, or is blind in both eyes, with 5/200 visual acuity or less and his service-connected disabilities alone did not necessitate the care or assistance of another person on a regular basis to attend to the activities of daily living, to protect him from the hazards or dangers of his daily environment, substantially confine him to his dwelling or immediate premises, or require institutionalization at any time during the pendency of the appeal.

CONCLUSION OF LAW

The criteria for SMC based on the need for regular aid and attendance or at the housebound rate have not been met at any time during the pendency of the appeal. 38 U.S.C. § 1114; 38 C.F.R. §§ 3.102, 3.326, 3.350, 3.351, 3.352.

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty with the United States Marine Corps from June 1993 to June 1997. 

The Board notes that the rating decision on appeal was issued in June 2018. Later in June 2018, the Veteran elected the modernized review system. 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 19.2(d)). The Veteran selected the Higher-Level Review lane when he opted in to the Appeals Modernization Act (AMA) review system by submitting a Rapid Appeals Modernization Program (RAMP) election form. 

Accordingly, the November 2018 AMA rating decision considered the evidence of record as of the date VA received the RAMP election form. The Veteran timely appealed this rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ). 

Evidence was added to the claims file during a period of time when new evidence was not allowed. Specifically, in October 2918 the regional office (RO) received VA medical records dated from July 2018 to October 2018. Typically, the period on appeal closes when the AMA rating decision was issued. But for RAMP initial Higher-Level Review opt-in appeals, as in the current appeal, the period on appeal closes when the RAMP election (opt-in) form was received by VA. Therefore, since the Veteran’s RAMP election (opt-in) form was received in June 2018, the Board may not consider this evidence. 84 Fed. Reg. 138, 182 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 20.300). 

In this regard, the Veteran is advised that he may file a Supplemental Claim and submit or identify this evidence. 84 Fed. Reg. 138, 182 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 3.2501). If the evidence is new and relevant, VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered. Id. Specific instructions for filing a Supplemental Claim are included with this decision.

Entitlement to special monthly compensation based on aid and attendance/housebound

The Veteran contends that his service connected disabilities impose on the Veteran a need for a SMC based on aid and attendance or housebound. See April 2019 Appellant Brief. 

Tellingly, in the November 2018 decision, the AOJ favorably found that the Veteran required assistance for bathing and tending to other hygiene needs. Moreover, under the AMA and RAMP regulations the Board is bound by this favorable finding. 84 Fed. Reg. 138, 167 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 3.104(c)).

Aid and Attendance

A veteran who, as the result of service-connected disability, has suffered the anatomical loss or loss of use of both feet, one hand and one foot, or is blind in both eyes, with 5/200 visual acuity or less or is permanently bedridden or so helpless as to be in need of regular aid and attendance under criteria set forth in 38 C.F.R. § 3.352(a) shall receive the provided level of compensation. 38 U.S.C. § 1114(l); 38 C.F.R. § 3.350(b).

Under the provisions of 38 C.F.R. § 3.352(a), the criteria to establish a factual need for aid and attendance include the inability of the veteran to dress or undress himself; ability to keep himself ordinarily clean and presentable; whether he requires frequent adjustment of any special prosthetic or orthopedic appliances which by reason of the particular disability cannot be done without aid; inability to feed himself; inability to attend to the wants of nature; or incapacity that requires assistance on a regular basis to protect the claimant from hazards or dangers incident to his daily environment. 

An individual who is bedridden meets the criteria for aid and attendance. The regulation provides that being “bedridden” means that the condition which, through its essential character, actually requires that the claimant remain in bed. Determinations that the veteran is so helpless as to be in need of regular aid and attendance will not be based solely upon an opinion that the claimant’s condition is such as would require him to be in bed. They must be based on the actual requirement of personal assistance from others. 38 C.F.R. § 3.352(a). 

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under the laws administered by VA. VA shall consider all information and medical and lay evidence of record. Where there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

In evaluating the evidence, the Board has been charged with the duty to assess the credibility and weight given to evidence. Davidson v. Shinseki, 581 F. 3d 1313 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007). Indeed, the Court has declared that in adjudicating a claim, the Board has the responsibility to do so. Bryan v. West, 13 Vet. App. 482, 488-89 (2000). In doing so, the Board is free to favor one medical opinion over another, provided it offers an adequate basis for doing so. Owens v. Brown, 7 Vet. App. 429, 433 (1995).

A. Anatomical Loss or Loss of Use of Both Feet, One Hand and One Foot, or is Blind in Both Eyes, with 5/200 visual acuity or less

The evidence of record is silent to the existence of anatomical loss or loss of use of both feet, one hand and one foot, or is blind in both eyes, with 5/200 visual acuity or less or is permanently bedridden. As such, the aid and attendance part of the claim rests on whether the Veteran’s service connected disabilities on a factual basis require the need for aid and attendance. 

B. A Factual Need for Aid and Attendance

The Veteran stated, in a March 2011 VA Medical Record, that he could probably take care of his financial affairs, but he lets his wife take care of financial affairs since she is better at finances. See March 2011 VA Medical Record. 

In an October 2012 VA Medical Record, it was noted that the Veteran could drive independently. 

The Veteran stated, in May 2014 and October 2014 VA Medical Records, he goes to the gym daily, eats healthy, and teaches martial arts once a week. 

In a June 2015 VA functional assessment, the Veteran was noted as being able to transfer from the car, read, write, and speak intelligibly with complete independence. Also, the Veteran did need to modify his independence (e.g. extra time, devices) to access the community. 

In June 2015, the Veteran used a cane and back brace for walking household distances. See June 2015 VA Medical Record. The Veteran uses a scooter for community mobility. Id. The Veteran was able to drive himself to a chiropractor appointment. Id. 

Additionally, it was noted that the Veteran needed assistance with bathing and dressing. See October 2015 VA Medical Record. But, the Veteran can independently take care of oral hygiene, toileting, eating, and transfer. Id. 

In June 2016, the Veteran stated he could ambulate, and is able to bathe and dress himself without assistance. See June 2016 VA Medical Record. The Veteran can drive. See id. 

In August 2017, the VA Medical Record noted the Veteran is able to drive, uses a brace and crutches, and intermittently uses a wheelchair. The Veteran dresses, grooms, and does hygiene with assistance. See August 2017 VA Medical Record. The Veteran can independently do meal prep, and instrumental activities of daily living. See id. 

In March 2018, the Veteran underwent an examination for housebound/aid and attendance status. The VA examiner noted that the Veteran had a good grip in his right hand, and full range of motion in his left hand. The Veteran uses a right ankle brace, cane for ambulation, and motorized scooter to travel long distances. The VA examiner noted that the Veteran has urinary and bowel incontinence. The VA examiner found that the Veteran can feed himself, manage financial affairs, did not require medication management, or require nursing home care. The Veteran cannot prepare own meals and needs assistance in bathing and tending to hygiene. Further, the Veteran is not legally blind. Finally, the VA examiner noted that the Veteran is able to leave home or immediate premises anytime. 

Based on the above, the Board finds that the most probative evidence of record shows that the Veteran’s service connected disabilities do not impose the need for regular aid and attendance. See Owens, supra. 

In reaching the above conclusion, the Board has not overlooked the fact that the AOJ favorably found that Veteran needs assistance with dressing, bathing, and tending to other hygiene needs. However, based on the record, the Veteran can feed himself, drive, manage medication, and financial affairs. Also, the Veteran does not require nursing home care, and is not legal blind. Additionally, the Veteran stated he goes to the gym and teaches a martial arts class. The Veteran can also read, write, transfer, and speak intelligibly with complete independence. Although the Veteran uses various items for ambulation, the VA examiner opined that he can leave his home or immediate premises anytime. Finally, the Veteran could independently take care of the instrumental activities of daily living. 

In summary, the Board finds that while the Veteran needs assistance in some areas, overall the most probative evidence of record shows that he does not require regular aid and assistance of another person because of his service-connected disabilities at any time during the pendency of the appeal. Id; also see Fenderson v. West, 12 Vet. App. 119, 125-26 (1999).

Housebound

As to the housebound claim, if a veteran does not qualify for increased benefits based on the need for aid and attendance, increased compensation benefits may still be payable if has a single permanent disability rated 100 percent disabling and has either additional service-connected disability or disabilities independently ratable at 60 percent or more or is permanently housebound by reason of service-connected disability or disabilities. 38 U.S.C. § 1114(s); 38 C.F.R. § 3.351(d).

The “permanently housebound” requirement is met when the veteran is substantially confined to his dwelling and the immediate premises or, if institutionalized, to the ward or clinical area, and it is reasonably certain that the disability or disabilities and resultant confinement will continue throughout his lifetime. Id.

Total disability due to individual unemployability (TDIU) can be considered a “single permanent disability” of 100 percent if TDIU is based on a single disability. See Bradley v. Peake, 22 Vet. App. 280, 293 (2008). A combination of disabilities can be applied to satisfy the 60 percent requirement, but it cannot satisfy the “single permanent disability” of 100 percent requirement. Id. 

A. 100 percent + 60 percent – Statutory Housebound

Here, the Board notes that the Veteran has had prior SMC rating based on housebound based from March 2015 to June 2015. At that time, the Veteran had a single 100 percent disability for a right ankle strain. After June 2015, the right ankle strain was lower to 10 percent disabling. 

The Veteran also had a single 100 percent rating for left patellofemoral syndrome from January 2007 to March 2007. In March 2007, the condition was decreased to 20 percent disabling. As such, the Veteran did not have a single 100 percent disability until the right ankle strain in March 2015. 

The Veteran had a period of TDIU from February 14, 2008, to March 19, 2015, and from June 1, 2015 to present he has had a TDIU. The claim thus turns on whether the Veteran’s TDIU ratings fit the definition of a “single permanent disability.” 

As noted above, a TDIU rating can qualify as a “single permanent disability” if the TDIU is based on a single service connected disability. See Bradley v. Peake, 22 Vet. App. 280, 293 (2008) (emphasis added). However, in this appeal, the Veteran’s TDIU ratings are based on his multiple service connected disabilities. See February 2014 Rating Decision; June 2017 Rating Decision. Thus, the Veteran’s TDIU ratings dos not fall into the definition of a “single permanent disability.” Therefore, the Board finds that the criteria for finding statutory housebound are not met at any time during the pendency of the appeal. See Fenderson, supra.

Similarly, the Veteran does not claim and the record does not show that he is institutionalized because of his service-connected disabilities. Therefore, the Board finds that this criteria for finding him housebound are not met at any time during the pendency of the appeal. See Fenderson, supra.

B. Permanently Housebound

As noted in the Aid and Attendance section, the Veteran underwent an examination for housebound/aid and attendance status in March 2018. The VA examiner noted that the Veteran had a good grip in his right hand, and full range of motion in his left hand. The Veteran uses a right ankle brace, cane for ambulation, and motorized scooter to travel long distances. The VA examiner noted that the Veteran has urinary and bowel incontinence. The VA examiner found that the Veteran can feed himself, manage financial affairs, did not require medication management, or require nursing home care. The Veteran cannot prepare own meals and needs assistance in bathing and tending to hygiene. Further, the Veteran is not legally blind. Finally, the VA examiner noted that the Veteran is able to leave home or immediate premises anytime. 

Based on the above, and evidence outlined in the Aid and Attendance section above, the Board finds that the most probative evidence of record shows that Veteran’s service connected disabilities did not substantially confine the Veteran to his dwelling and immediate area. See Owens, supra.

In this regard, the Board notes that the March 2018 VA examiner opined that the Veteran can leave the home or immediate premises anytime. Additionally, the Veteran stated he is able to drive, and has driven himself to doctor’s appointments. Although the Veteran cannot prepare his own meals and needs aid for bathing and tending to hygiene, he can feed himself, manage financial affairs, medication, and does not require nursing home care. 

Given the above, the Board finds that the most probative evidence of record shows that the Veteran’s service-connected disabilities do not impose a permanent household disability at any time during the pendency of the appeal. See Owens, supra; Fenderson, supra. 

Consequently, the Board finds that the Veteran’s claim for entitlement to SMC for aid and attendance/housebound is denied.

In reaching the above conclusions, the Board has also considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the probative evidence is against the claim for a left knee disorder, the Board finds that this doctrine is not applicable to this claim. See 38 U.S.C. § 5107(b); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Gilbert, 1 Vet. App. at 55-56.

 

NEIL T. WERNER

Acting Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD Timothy A. Campbell, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.